PACIFIC TELEGRAPH COMPANY v. JOHN I. UNDERWOOD.

FILED JUNE 29, 1893.    NO. 4682.

1. **Telegraph Companies : COMMON CARRIERS: LIMITING LIA-BILITY.** The legal status of a telegraph company is practically that of a common carrier of intelligence for hire, and such company is bound to correctly and promptly transmit and deliver messages entrusted to it, and cannot by contract relieve itself, either in whole or in part, from liability for injury or loss resulting from its own negligence.

2. **————: ————: ————: PRINTED STIPULATIONS IN MESSAGE BLANKS.** A telegraph company had printed on its message blanks: "The company will not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message." *Held,* An attempt on the part of the telegraph company to limit its liability; that this clause, if regarded as a contract, was without consideration, unjust, unreasonable, and violative of section 12, chapter 89a, Compiled Statutes.

ERROR from the district court of Lancaster county. Tried below before FIELD, J.

*Marquett, Deweese & Hall,* for plaintiff in error.

*Charles E. Magoon, contra.*

RAGAN, C.

John I. Underwood sued the Pacific Telegraph Company in the district court of Lancaster county. The facts involved in the case are substantially : Underwood lived in Lincoln, Nebraska. He had some household goods in Richmond, Indiana. He desired these shipped to Lincoln, and wrote to one Lawrence at Richmond, asking the rate on goods. Lawrence delivered to a telegraph company at Richmond the following dispatch :

"RICHMOND, INDIANA, July 2, 1886.

"*To John I. Underwood, Lincoln, Nebraska :* Rate seventy-six dollars per car; $1.09 per hundred, local.

"L. L. LAWRENCE."

This telegram when delivered to Underwood read :

"RICHMOND, INDIANA, July 2, 1886.

"*To John I. Underwood, Lincoln, Nebraska :* Rate twenty-six dollars per car; $1.09 per hundred, local.

"L. L. LAWRENCE."

Underwood, relying upon the correctness of this telegram as delivered, ordered his goods shipped as a car lot, and on their arrival at Lincoln was obliged to pay seventy-six dollars freight. He brought this suit to recover the difference between the seventy-six dollars and twenty-six dollars.

The telegraph company defended on three grounds :

1st. That the mistake in the telegram was made on another line.

2d. That Underwood did not present his claim for damages to the telegraph company within sixty days after the date of the telegram.

3d. That Underwood was not damaged by the mistake.

There was a verdict and judgment for Underwood and the telegraph company brings the case here for review.

The first error assigned is that the court erred in admitting in evidence the telegram as it originally started from

Richmond, for the reason that it is a different one from that set out in the petition. On looking into the record we find that Underwood claims that the telegraph company delivered to him a telegram which read "twenty-six dollars per car," but he avers that this telegram, as originally sent, read "seventy-six dollars per car," and that through the negligence of the telegraph company it was altered. The principal objection, however, is that Underwood, on the trial to the jury, put in evidence only the written part of the telegram without putting in the printed matter on the blank. The printed matter alluded to was that usually found on all telegraph blanks and contains, amongst other conditions and terms, this: "This company will not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message." The telegraph company did not undertake that the printed conditions on the telegraph blank should be transmitted. These conditions were no part of the message sent. · The evidence corresponded with the pleadings, was competent, and there was no error in its admission.

The second error alleged is the refusal of the court to give the jury this instruction: "If the jury find from the evidence that the telegraphic blank on which was written the message received by the plaintiff from the defendant, contained a clause or a provision to the effect that the company will not hold itself liable for errors or delay in transmission or delivery of unrepeated messages in any case where the claim is not presented in writing within sixty days after the sending of the message, then, before the plaintiff can recover, he must show that he presented his claim to the defendant in writing within sixty days after receiving the message, and if the jury find from the evidence that the plaintiff did not so present his claim in writing within sixty days after the sending of the telegram, then the defendant is not liable and the plaintiff cannot recover, and your verdict should be for the defendant."

There are four reasons why the refusal of the court to give this instruction was correct:

*a.* This suit is not based on a contract, but is grounded in tort.

*b.* A telegraph company is a common carrier of intelligence for hire, bound to promptly and correctly transmit and deliver all messages entrusted to it, and cannot by contract exempt itself from liability for its own negligence.

*c.* The clause printed on the telegraph blank, to the effect that the telegraph company would not be liable for damages in any case unless the claim was presented in writing in sixty days, was and is unreasonable and wholly without consideration if viewed as a contract between the telegraph company and the sender of the message, and an attempt on the part of the telegraph company to enact for itself a statute of limitations. If it can make its liability for negligence depend on notice of claim being given in sixty days, it may make it six days. If liability can be made to depend upon the notice being in writing it can limit it to pen and ink. The laws of this commonwealth are for the protection and government of corporations and individuals alike, and all citizens should transact their business with reference to these laws. The attempt so often indulged in by insurance and telegraph companies, to prescribe for themselves a law, is not one that appeals to the judgment or commends itself to the conscience of this court. See on this subject: *Tyler, Ullman & Co. v. Western Union Telegraph Co.*, 60 Ill., 421; *Western Union Telegraph Co. v. Crall*, 21 Am. & Eng. Corp. Cas. [Kan.], 95; *Gillis v. Western Union Telegraph Co.*, 25 Id. [Vt.], 568, and cases there cited; *Johnston v. Western Union Telegraph Co.*, 21 Id. [Ga.], 114; *Western Union Telegraph Co. v. Longwill*, 25 Id. [N. M.], 559.

*d.* The instruction asked was violative of the statute of the state, section 12, chapter 89*a*, Compiled Statutes: "Any telegraph company engaged in the transmission of tele-

graphic dispatches is hereby declared to be liable for the non-delivery of dispatches entrusted to its care, and for all mistakes in transmitting messages made by any person in its employ, and for all damages resulting from a failure to perform any other duty required by law; and any such telegraph company shall not be exempted from any such liability by reason of any clause, condition, or agreement contained in its printed blanks."

The third contention of the plaintiff in error is that the mistake in the telegram was made by the Pacific Mutual Telegraph Company, and the jury erred in not so finding. Whether this was so was entirely a question of fact for the jury and was properly submitted to them, and at the request of the plaintiff in error they were instructed on the subject as follows: "The jury are instructed that the defendant in this case is not liable for any errors or mistakes made on their connecting telegraph lines, and if the jury find from the evidence that the error or mistake complained of in the telegram was made on other lines before it came onto the line of the defendant, and you find that the message was transmitted by the defendant from the point where the message came to the defendant to its place of destination in the same form that it was received, then the defendant has not been guilty of negligence, is not liable, and you should find for the defendant." The jury said by their verdict that the defense was not made out. They were clothed by law with the duty of weighing the evidence and determining, and we cannot say they came to a wrong conclusion.

Finally, it is insisted that Underwood suffered no damage by reason of the mistake made in the dispatch. On looking into the record we find that the evidence is that Underwood's goods weighed about two thousand pounds; at $1.09 per hundred, local, the freight would have been $21.80. The testimony further shows that he would not have shipped them as a car load had he known that the

rate was $76 instead of $26. It would thus appear that in any event Underwood was damaged $54.20. There is no error in the judgment of the district court and the same is

AFFIRMED.

THE other commissioners concur.